# In the United States Court of Federal Claims

No. 09-305C
Filed: September 30, 2009
**TO BE PUBLISHED**

*******************************************

|  |  |
|---|---|
| | *   Administrative Record, RCFC App. C (IV) |
| | *      ¶ 8(e); |
| | *   Competition in Contracting Act, |
| | *      41 U.S.C. § 251 *et seq.*; |
| | *   Contract Disputes Act, |
| | *      41 U.S.C. § 601, *et seq.*; |
| | *   Federal Acquisition Regulation, |
| TAYLOR CONSULTANTS, INC., | *      48 C.F.R. § 3.104-3(a), 3.104-4(b), |
| | *      48 C.F.R. § 15.503(a)(2), |
| Plaintiff, | *      48 C.F.R. § 19.301-1(c)-(d), |
| | *      48 C.F.R. § 19.302(d)-(j), |
| v. | *      48 C.F.R. § 33.101; |
| | *   Small Business Size Regulations, |
| THE UNITED STATES, | *      13 C.F.R. §§ 121.1001-121.1101; |
| | *   Motion To Dismiss, RCFC 12(b)(1), (b)(6); |
| Defendant. | *   Standing; |
| | *   Procurement Integrity Act, 41 U.S.C. § 423; |
| | *   RCFC 15(a)(2); |
| | *   RCFC 7 (a)(2); |
| | *   Trade Secrets Act, 18 U.S.C. § 1905; |
| | *   Tucker Act, 28 U.S.C. § 1491(b)(1), |
| | *      as amended by the Administrative Dispute |
| | *      Resolution Act of 1996, |
| | *      Pub. L. No. 104-320. |

*******************************************

**Bryant Steven Banes,** Neel, Hooper & Banes, PC, Houston, Texas, Counsel for Plaintiff.

**William Porter Rayel,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

**BRADEN, *Judge.***

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY.[1]

On December 12, 2008, the National Guard Bureau ("NGB") issued Solicitation No. W9133L-09-R-00007 for "Child and Youth training management, program assessment, curriculum development, supervision and assessment to the 54 States and Territories" (the "Solicitation"). Gov't App. at 2.  The Solicitation was a Total Service-Disabled Veteran-Owned Small Business Set-Aside.  *Id*.  The NGB received proposals from six offerors, including Taylor Consultants, Inc. ("Plaintiff") and Veteran Enterprise Technology Services ("VETS").  *Id*. at 15.  On January 24, 2009, the NGB determined that Plaintiff's proposal was the "best value."  *Id*. at 15, 35.  Although pre-award notification is required by Federal Acquisition Regulation ("FAR") 15.503(a)(2) the contacting officer ("CO") failed to notify unsuccessful offerors that Plaintiff was the prospective awardee.  *Id*.  On January 25, 2009, NGB awarded Contract No. W9133L-09-C-00007 to Plaintiff for $4,290,899.28 ("the January 25, 2009 Contract").  Compl. ¶ 16; *see also* Gov't App. at 35.

On January 30, 2009, VETS filed a size protest with the CO alleging that Plaintiff did not qualify as a small business and was not eligible to be awarded the Contract.  Compl. ¶ 17; *see also* Gov't App. at 35.  On February 5, 2009, the NGB forwarded VETS' protest to the Small Business Administration ("SBA") and the SBA ordered Plaintiff to suspend work, pending the SBA's disposition.  Gov't App. at 15.

On April 28, 2009, the SBA found that Plaintiff was "other than small," with respect to "the subject procurement and for all revenue based size standards."  *Id*. at 12.  That same day, Plaintiff requested reconsideration of the SBA's size determination.  Compl. ¶ 23.

On May 1, 2009, the SBA denied Plaintiff's request for reconsideration.  Pl. Ex. 3.  Also on May 1, 2009, the NGB re-evaluated the other proposals and determined that VETS' proposal provided the "best value."  Gov't App. at 14-26.  That same day, the NGB sent pre-award notifications of VETS' selection as the prospective awardee to the other offerors, but excluded Plaintiff.  *Id*. at 27-31.

On May 5, 2009, Plaintiff's counsel sent an e-mail to the NGB "formaliz[ing] an agency protest," in the event that the NGB decided to terminate the January 25, 2009 Contract and award it to another offeror.  *Id*. at 32.  The NGB considered this an agency protest, as well as a claim under the Contract Disputes Act, 41 U.S.C. § 601, *et seq* ("CDA").  *Id.*

---

[1] The facts cited herein primarily were derived from: the May 13, 2009 Complaint ("Compl."); the Defendant ("Government")'s May 19, 2009 Appendix ("Gov't App. 1-40"); and Plaintiff's May 26, 2009 Exhibits ("Pl. Ex. 1-6"); Plaintiffs' June 10, 2009 Status Report ("6/10/09 Pl. St. Rep."); Plaintiff's July 2, 2009 Status Report ("7/2/09 Pl. St. Rep."); and Plaintiff's July 8, 2009 Status Report ("7/8/09 Pl. St. Rep.").

Because this case concerns proceedings before the National Guard Bureau, the Small Business Administration and the Office of Hearings and Appeals therein, and the United States Court of Federal Claims, a unified chronology is attached hereto as a Court Exhibit.

On May 8, 2009, at 4:05 p.m. CST, the NGB issued a decision dismissing Plaintiff's May 5, 2009 protest, because the SBA determined that Plaintiff was not a small business and therefore not an "interested party," as required by FAR 33.101. Pl. Ex. 4; *see also* Gov't App. at 35-38. The NGB also stated that and the protest was filed prior to any termination and was therefore not ripe. *Id.* The May 8, 2009 NGB decision, however, did not address Plaintiff's potential termination claim. Pl. Ex. 4. At 4:08 p.m. CST that same day, the NGB cancelled the January 25, 2009 contract with Plaintiff and awarded a contract to VETS ("the May 8, 2009 Contract"). Compl. ¶ 30. At 5:30 p.m. CST, Plaintiff renewed the May 5, 2009 protest with the NGB and also filed a separate protest with the SBA, challenging VETS' small business representation. Pl. Ex. 4.

On May 11, 2009, Plaintiff appealed the SBA's April 28, 2009 size determination to the SBA's Office of Hearing and Appeals ("OHA"). Compl. ¶ 37. Plaintiff also requested that performance under the May 8, 2009 Contract be stayed pending OHA review. *Id.* ¶ 29. On that date, the NGB also denied Plaintiff's stay request. Pl. Ex. 4. In addition, on May 12, 2009, the SBA dismissed Plaintiff's May 8, 2009 protest regarding the May 8, 2009 Contract, because of the SBA's April 28, 2009 size determination that Plaintiff was "other than small" and therefore was not an "interested party." Gov't App. at 39.

On May 13, 2009, Plaintiff filed under seal a Complaint in the United States Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. § 1491(b), and the Contract Disputes Act, 41 U.S.C. § 601, *et seq.* ("CDA"). The Complaint requested an injunction requiring the NGB to disqualify VETS and terminate the May 8, 2009 Contract. The Complaint also requested lost profits, or in the alternative, reinstatement of the January 25, 2009 Contract. Compl. ¶ 41. On May 19, 2009, the Government filed a Motion To Dismiss, pursuant to RCFC 12(b)(1) and (6) ("Gov't Mot."). On May 20, 2009, Plaintiff filed a Request That The Full Administrative Record Be Filed.

On May 27, 2009, Plaintiff appealed the SBA's May 12, 2009 dismissal of the protest regarding the NGB award of the May 8, 2009 Contract. 7/2/09 Pl. St. Rep. Encl. 1. At the parties' request, on June 2, 2009, the court held an oral argument on the Government's May 19, 2009 Motion to Dismiss ("TR").

On July 1, 2009, the OHA affirmed the SBA's April 28, 2009 size determination as to Plaintiff. 7/2/09 Pl. St. Rep. On June 5, 2009 the NGB issued a stop work order on Contract No. W9133L-09-C-00007, pending a decision in this case. Pl. 6/10/09 St. Rep. On July 7, 2009, the OHA affirmed the SBA's May 12, 2009 dismissal of Plaintiff's protest regarding the May 8, 2009 Contract and denied Plaintiff's appeal. 7/8/09 Pl. St. Rep.

On August 13, 2009, Plaintiff filed a Motion For Leave to File Plaintiff's First Amended Complaint And Request For Injunctive Relief ("First Am. Compl."). In addition to the 28 U.S.C. § 1491(b) claims alleged in the May 13, 2009 Complaint, the First Amended Complaint challenged the July 2, 2009 and July 7, 2009 OHA decisions, respectively affirming the SBA's April 28, 2009 size determination regarding Plaintiff and the SBA's May 12, 2009 dismissal of Plaintiff's size

protest regarding VETS.  First Am. Compl. ¶ 7.  On August 31, 2009, the Government filed a Renewed  Motion To Dismiss And Response ("Gov't Ren. Mot.").

## II.    DISCUSSION.

### A.    Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act, 28 U.S.C. § 1491.  This Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id*. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute and it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [it] whenever a substantive right . . . exists."  *United States* v. *Testan*, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").  The burden of establishing jurisdiction falls upon the plaintiff. *FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden to allege facts sufficient to establish jurisdiction resides with plaintiff); *see also* RCFC 12(b)(1).

The May 13, 2009 Complaint asserts two causes of action: a CDA claim under 41 U.S.C. § 609(a) for improper or bad faith termination of Contract No. W9133L-09-C-00007; and a post-award protest of the Government's actions in terminating Contract No. W9133L-09-C-00007 awarding the May 8, 2009 Contract, invoking jurisdiction under 28 U.S.C. § 1491(b).  Compl. ¶ 4-6 ("As such, this complaint constitutes both a claim and protest against [the Government].");  *see also id*. ¶¶ 5-6, 40-48.  The court's jurisdiction to adjudicate the claims alleged in the Complaint and the additional claims in the First Amended Complaint regarding the July 2, 2009 and July 7, 2009 OHA decisions is discussed herein.

### B.    Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the "[United States Court of Federal Claims'] general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999).  When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor."  *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in

4

question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### C.      Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(6).

On May 18, 2009, the United States Supreme Court issued *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009), restating the pleading standard previously discussed in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007).  To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face," *i.e.*, sufficient factual content must be pled on which a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  The Court explained that the plausibility standard "asks for more than a sheer possibility that [the] defendant has acted unlawfully."  *Id*.  "Plausibility of 'entitlement to relief'" requires more than pleading facts that are "merely consistent with" a defendant's liability.  *Id*. (quoting *Twombly*, 550 U.S. at 557).

In *Iqbal*, the Court discussed, in detail, the "two working principles" of *Twombly's* heightened pleading requirements.  *Id*.  First, although factual allegations alleged must be accepted as true, the trial court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*. at 1949-50 (citing *Twombly*, 550 U.S. at 555).  Accordingly, the Court advised trial courts to begin their analysis "by identifying the allegations [of law] in the complaint that are not entitled to the assumption of truth."  *Id*. at 1951.  If the legal allegations are of a "conclusory nature," they are not entitled to the presumption of truth.  *Id*.  Second, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint also must state a "plausible claim for relief."  *Id*. at 1950 (citing *Twombly*, 550 U.S. at 556).  Here, factual allegations are examined to determine "if they plausibly suggest an entitlement to relief."  *Id*. at 1951.

### D.      Filing The Administrative Record Was Not Required In This Case.

The Rules of the United States Court of Federal Claims provide that, in bid protest cases filed under 28 U.S.C. § 1491(b), the court will hold an initial status conference after the filing of a complaint to discuss relevant issues, including the content and time for filing the administrative record.  RCFC App. C (IV) ¶ 8(e).  In this case, the court convened an initial status conference on May 18, 2009, at which the Government advised the court it planned to file a Motion To Dismiss, so that filing the administrative record would be deferred until after the court issued a decision on this dispositive motion.

On May 20, 2009, Plaintiff requested that the "full" administrative record be filed, arguing that the Government's Motion To Dismiss is inappropriate in light of the "grossly incomplete record."  Pl. Resp. at 1-2.  The Government responded that the court had an adequate record on which to decide the pending jurisdictional motion.  Gov't Reply at 2-4.  Plaintiff bears the burden to establish jurisdiction.  *Id*.  Since a motion to dismiss for failure to state a claim "simply tests" the sufficiency of a complaint, an administrative record is not required.  *Id*.

Early production of an administrative record may expedite the final resolution of a case, however, the court has determined that the Administrative Record is not required in this case to resolve the Government's pending motion. *OTI America, Inc.* v. *United States*, 68 Fed. Cl. 108, 118 (2005) (ruling on the Government's Motion To Dismiss without a complete Administrative Record). Accordingly, Plaintiff's May 20, 2009 Request That The Full Administrative Record Be Filed is denied.[2]

**E.      The Government's May 19, 2009 Motion To Dismiss, Pursuant To RCFC 12(b)(1), (6).**

**1.      Plaintiff's Post-Award Tucker Act Protest.**

**a.      The Government's Argument.**

The Government moves to dismiss Plaintiff's post-award bid protest on three grounds. First, Plaintiff does not have standing to protest the May 8, 2009 Contract, because Plaintiff is not an "interested party," as required by 28 U.S.C. § 1491(b)(1). Gov't Mot. at 1, 7. This procurement was a small business set-aside. *Id*. at 8. On April 29, 2009, the SBA determined that Plaintiff was "other than small." *Id*. Pursuant to 13 C.F.R. § 121.1004(c),[3] 13 C.F.R. § 121.1009(g)(1),[4] and FAR § 19.301-1(c),[5] the SBA's April 28, 2009 size determination was effective immediately and binding on the CO. *Id*.; *see also* TR at 82.

---

[2] Since the recent *Twombly* and *Iqbal* decisions place a high burden on a plaintiff at the pleading stage, due process considerations may require the production of the administrative record in some cases. For example, assuming *arguendo* that the court had jurisdiction to review final decisions by the SBA and/or OHA, the court would need a full administrative record to conduct the review required by the Administrative Procedure Act, 5 U.S.C. § 706, which states, in relevant part, that: "the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706**.**

[3] Section 121.1004(c) of Title 13 of the Code of Federal Regulations provides that: "A timely filed protest applies to the procurement in question even though a contracting officer awarded the contract prior to receipt of the protest." 13 C.F.R. § 121.1004(c).

[4] Section 121.1009(g)(1) of Title 13 of the Code of Federal Regulations provides that: "A formal size determination [by the SBA] becomes effective immediately and remains in full force and effect unless and until reversed by OHA." 13 C.F.R. § 121.1009(g)(1).

[5] FAR 19.301-1(c) provides that: "If an offeror's small business status is challenged, the SBA will evaluate the status of the concern and make a determination, which will be binding on the contracting officer, as to whether the offeror is a small business." 48 C.F.R. § 19.301-1(c).

Second, the Government avers that regardless of whether OHA affirms or reverses the SBA's April 28, 2009 size determination, Plaintiff's protest of the 5/8/09 VETS Contract is not justiciable. *Id*. at 9-13; *see also* TR at 5-10. Plaintiff received an adverse size determination on April 28, 2009. *Id*. at 11, 13. In turn, NGB terminated Plaintiff's January 25, 2009 Contract and awarded the 5/8/09 VETS Contract. *Id*. at 13. On May 11, 2009, three days *after* the 5/8/09 VETS Contract, Plaintiff appealed its size determination to OHA. *Id*. FAR 19.302(g)(2)[6] provides that an award made prior to the notice of an appeal thereof will not be affected by an OHA appeal. *Id*. at 10, 13; *see also* TR at 7. Therefore, "although this [c]ourt has held that it possesses jurisdiction to consider determinations of the SBA that affect the award of a contract to an interested party . . . in this case, the exercise of the [c]ourt's jurisdiction is not warranted because the [c]ourt may not, as a matter of law, order NGB to terminate its award to VETS, even if the SBA's size determination was irrational." *Id*. at 9-10 (internal citations omitted).[7]

###### b.    Plaintiff's Response.

Plaintiff responds that it is an "interested party," because it was awarded the January 25, 2009 Contract "and its only obstacle to having that [C]ontract reinstated is a wrongly decided [and] inapplicable SBA decision[.]" Pl. Resp. at 12-13. The NGB initially was satisfied that Plaintiff was a small business. *Id*. at 13. Therefore, the Government's subsequent attack on Plaintiff's size is too late and moot. *Id*.

Plaintiff also contends that the NGB erred in relying on the April 28, 2009 SBA size determination, because it was not based on Plaintiff's present business status, but a prior size determination. Pl. Resp. at 13; *see also* TR at 33, 40-44. In 2006, the SBA found that Plaintiff was "other than small" for a procurement with a six million dollar size. *Id*. The procurement in this case, however, has a size standard of seven million dollars. *Id*. Section 121.1009(g)(5) of Title 13 the Code of Federal Regulations provides that "[a] concern determined to be other than small under a particular size standard is ineligible for any procurement . . . which requires the same or a lower size standard[.] . . . After an adverse size determination, a concern cannot self-certify as small under the same or lower size standard unless it is first recertified as small by [the] SBA." 13 C.F.R. § 121.1009(g)(5). Because the 2006 size determination was $1 million less than the Solicitation in this case, Plaintiff did not need re-certification by the SBA. Pl. Resp. at 13-14. Accordingly, the SBA's application of the 2006 size determination to the current procurement violated 13 C.F.R. §

---

[6] FAR 19.302(g)(2) provides that: "If an award [is] made before the time the contracting officer received notice of the appeal, the contract shall be presumed to be valid." 48 C.F.R. § 19.302(g)(2).

[7] The Government also argued that Plaintiff cannot challenge the SBA's April 28, 2009 size determination in this court, because Plaintiff has not exhausted administrative remedies by appealing the SBA's determination and receiving a final decision from OHA. Govt Mot. at 8. (citing 13 C.F.R. § 121.1101(a)). This basis for dismissal, however, was satisfied by the July 2, 2009 and July 7, 2009 OHA decisions, filed after the Government's Motion to Dismiss was lodged on May 19, 2009.

121.1009(g)(5) and the Government erred in relying on the SBA 2006 size determination in awarding the January 25, 2009 Contract to VETS.  *Id.* at 13.

Plaintiff also points out that, pursuant to FAR §§ 19.302(g)(1-2), (j), and (k),[8] the NGB had the authority and discretion to leave the January 25, 2009 Contract in place, despite the SBA's April 28, 2009 adverse size determination, because VETS' protest was not filed until after the January 25, 2009 Contract was awarded to Plaintiff.  *Id.* at 14.  Although the Government cites FAR 19.301-1(c) for the proposition that "[i]f an offeror's small business status is challenged, the SBA['s] . . . determination [] will be binding on the contracting officer, as to whether the offeror is

---

[8] FAR 19.302 provides that:

(g)(1) Within 10 business days after receiving a protest, the challenged concern's response, and other pertinent information, the SBA will determine the size status of the challenged concern and notify the contracting officer, the protester, and the challenged concern of its decision by certified mail, return receipt requested.

(2) The SBA Government Contracting Area Director, or designee, will determine the small business status of the questioned concern and notify the contracting officer and the concern of the determination.  Award may be made on the basis of that determination.  This determination is final unless it is appealed in accordance with paragraph (i) of this section, and the contracting officer is notified of the appeal before award.  *If an award was made before the time the contracting officer received notice of the appeal, the contract shall be presumed to be valid*[.]

\* \* \*

(j) A protest that is not timely, even though received before award, shall be forwarded to the SBA Government Contracting Area Office (see paragraph (c)(1) of this section), with a notation on it that the protest is not timely.  The protester shall be notified that the protest cannot be considered on the instant acquisition but has been referred to SBA for its consideration in any future actions.  *A protest received by a contracting officer after award of a contract shall be forwarded to the SBA Government Contracting Area Office with a notation that award has been made.* The protester shall be notified that the award has been made and that the protest has been forwarded to SBA for its consideration *in future actions*.

(k) When a concern is found to be other than small under a protest concerning a size status rerepresentation . . . a contracting officer *may permit contract performance to continue*, issue orders, or exercise option(s), *because the contract remains a valid contract*.

48 C.F.R. § 19.302(g) (1-2), (j), (k) (emphasis added).

a small business," the Government fails to recognize that FAR 19.301-1(c) applies to "offerors" and not to "awardees." 48 C.F.R. § 19.301-1(c); *see also* TR at 87. Plaintiff is an "awardee," not an "offeror." Pl. Resp. at 14, 25. Therefore, the SBA's April 28, 2009 size determination was not binding and NGB had the discretion to leave the January 25, 2009 Contract in place. *Id.*

Plaintiff also asserts that exhaustion of administrative remedies is not a prerequisite for the court to enjoin an invalid application of procurement statutes and regulations. Pl. Resp. at 15-16; *see also* TR at 51. Here, Plaintiff explains that it is not challenging the SBA's April 28, 2009 size determination, but is asking the court to rule whether the NGB violated FAR requirements and to enjoin the award of the May 8, 2009 Contract to VETS, pursuant to 28 U.S.C. § 1491(b)(2) and 5 U.S.C. § 706. *Id.*[9]

Specifically, when the NGB forwarded VETS' January 30, 2009 protest to the SBA, the NGB failed to alert the SBA that Contract W9133L-09-C-00007 had been awarded to Plaintiff, as it was required to do under FAR 19.302(d), (h)(3). *Id.* at 18. The SBA then failed to issue a decision within ten business days, in accordance with 13 C.F.R. § 121.1009(g). *Id.* at 19. Nevertheless, the NGB stayed Plaintiff's performance of the January 25, 2009 Contract and violated FAR 19.302(h)(1), by applying the April 28, 2009 size determination retroactively, despite the fact that a size determination only affects future contracts. 48 C.F.R. § 19.302(h)(1) ("After receiving a protest involving an offeror being considered for award, the contracting officer shall not award the contract until (i) the SBA has made a size determination or (ii) 10 business days have expired since SBA's receipt of a protest, whichever occurs first.").

Therefore, the Government cannot argue that it canceled the January 25, 2009 Contract, because of the SBA's subsequent April 28, 2009 size determination, and also argue that the May 8, 2009 *post*-4:08 P.M. CST VETS award is "presumptively valid," because Plaintiff challenged the *bona fides* of VETS' size after the May 8, 2009 Contract was awarded to VETS. Pl. Resp. at 22-23.

### c.     The Government's Reply.

The Government replies that Plaintiff's argument is unfounded, because a "timely filed protest applies to the procurement in question even though a contracting officer awarded the contract prior to receipt of the protest." Gov't Reply at 4-5 (quoting 13 C.F.R. § 121.1004(c)). Moreover, FAR 19.301-1(c) provides that: "[i]f an offeror's small business status is challenged, the SBA will evaluate the status of the concern and make a determination, *which will be binding on the contracting officer*[.]" 48 C.F.R. § 19.301-1(c) (emphasis added). The distinction that Plaintiff attempts to draw between an "offeror" and an "awardee" under FAR 19.301-1(c) likewise is misplaced, because that regulation authorizes challenges only to awarded contracts. Gov't Reply at 5. The SBA appropriately determined that the January 30, 2009 VETS' size protest was timely and Plaintiff was determined by the SBA to be not a "small business" for the purposes of the December

---

[9] Subsequently, Plaintiff directly challenged the SBA's size determination, as well as the OHA affirmation of the SBA's decision. Am. Compl. ¶ 7.

12, 2008 Solicitation.  *Id*.  Accordingly, the SBA's April 28, 2009 size determination is binding on the NGB under FAR 19.301-1(c).  *Id*. at 6.

Therefore, although FAR 19.302(g)(2)[10] accords presumptive validity to the May 8, 2009 Contract, that regulation does not apply to the January 25, 2009 Contract award, based on Plaintiff's self-certification.  Gov't Reply at 7; *see also* TR at 85.  As such, the January 25, 2009 Contract cannot be "presumed to be valid."  *Id*.  FAR 19.302(g)(2) "*is* applicable to the VETS [May 8, 2009] award since that award was based upon the SBA's [April 28, 2009 size] determination that [Plaintiff] was other than small."  *Id*. at 7 n.8.

### d.    The Court's Resolution.

The May 13, 2009 Complaint alleges that: the Government violated "several procurement statutes and regulations"[11] in awarding the May 8, 2009 contract to VETS; and "the [NGB's] reliance on the improper and irrational SBA [April 28, 2009] size determination, . . . [and] clear evidence of [NGB's] disparate treatment of Plaintiff and . . . clear evidence of bad faith in terminating Plaintiff's [January 25, 2009] contract," each of which and together violate  "several procurement statutes and regulations."  Compl. ¶¶ 44-45, 50.

### i.    Plaintiff Does Not Have Standing To Protest The May 8, 2009 Contract Award.

The United States Supreme Court has held that the party invoking federal jurisdiction bears the burden of establishing standing.  *Summers* v. *Earth Island Inst*., 129 S. Ct. 1142, 1149 (2009). In this case, Plaintiff alleges standing under Section 1491(b)(1) of the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, § 12(a) 110 Stat. 3870 (1996), that authorizes the United States Court of Federal Claims to:

---

[10] FAR 19.302(g)(2) provides that:

the SBA . . . will determine the small business status of the questioned concern and notify the contracting officer and the concern of the determination. . . . This determination is final unless it is appealed in accordance with paragraph (i) of this section, and the contracting officer is notified of the appeal before award.  If an award was made before the time the contracting officer received notice of the appeal, the contract shall be presumed to be valid.

48 C.F.R. § 19.302(g)(2).

[11] The May 13, 2009 Complaint also alleges violations of the Procurement Integrity Act, 41 U.S.C. § 423, as implemented by FAR 3.104-3(a) and 3104-4(b), the Trade Secrets Act, 18 U.S.C. 1905; and the Competition In Contracting Act, 41 U.S.C.§ 251, *et seq*.  Compl. ¶¶ 44-46.

render judgment on an action *by an interested party* objecting to a solicitation by a federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1) (emphasis added).

To establish standing as an "interested party" under Section 1491(b)(1), the United States Court of Appeals for the Federal Circuit has held that the protestor must establish that it is "an actual or prospective bidder . . . whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov Employees* v. *United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (internal citations omitted). A critical component of the "direct economic interest" element requires that a protestor establish that any alleged errors caused the protestor "prejudice." *Myers Investigative & Sec. Svcs., Inc.* v. *United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) ("In fact, prejudice (or injury) is a necessary element of standing."). Accordingly, the United States Court of Appeals for the Federal Circuit has held that an actual or prospective bidder is prejudiced only if that entity had a "substantial chance" of winning the contract award, but for the Government's error. *Bannum, Inc.* v. *United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005).

In this case, the December 12, 2008 Solicitation was a small business set-aside at a $7 million level. Gov't App. at.6. A business determined by the SBA to be "other than small," does not qualify to compete for the procurement and therefore would not have any chance, much less a "substantial chance," of winning the contract award. 13 C.F.R. § 121.1009(g)(5) ("A concern determined to be other than small under a particular size standard is ineligible for any procurement . . . which requires the same or a lower size standard[.]"); *see also Int'l Mgmt. Servs.* v. *United States*, 80 Fed. Cl. 1, 6 (2007) (holding plaintiff lacked standing to challenge small business status of awardee, because plaintiff was not a small business). Therefore, a threshold issue in this case is whether the SBA's April 28, 2009 decision that Plaintiff was "other than small" divests Plaintiff of standing to protest the May 8, 2009 award to VETS.

The procedures for challenging small business set-aside eligibility are set forth in Part 121 of Title 13 of the Code of Federal Regulations, "Small Business Size Regulations." 13 C.F.R. §§ 121.1001-121.1110. These regulations afford "[a]ny offeror whom the contracting officer has not eliminated for reasons unrelated to size" to protest a small business set-aside procurement. 13 C.F.R. § 121.1001(a)(1). The protest, however, must be timely, *i.e.*, "received by the contracting officer prior to the close of business on the [fifth] day, exclusive of Saturdays, Sundays, and legal holidays, after the contracting officer has notified the protestor of the identify of the prospective awardee." 13 C.F.R. § 121.1004(a)(2). A timely protest, however, only "applies to the procurement in question[,] even though a contracting officer awarded the contract prior to receipt of the protest." 13 C.F.R. § 121.1004(c).

The Small Business Size Regulations mandate that a SBA size determination becomes effective immediately and "remains in full force and effect unless and until reversed by OHA." 13

C.F.R. § 121.1009(g)(1); *see also* 48 C.F.R. § 19.301-1(c) ("[i]f an offeror's small business status is challenged, the SBA['s] . . . determination . . . will be binding on the contracting officer, as to whether the offeror is a small business"); *Ironclad/EEI* v. *United States*, 78 Fed. Cl. 351, 364 (2007) ("SBA's decision that plaintiff was 'other than small' became effective immediately after issuance, and was binding on the subject procurement, as a matter of law."). Therefore, in this case, once the SBA determined that Plaintiff was "other than small," Plaintiff was not eligible to be awarded any procurement of the same or lesser size, unless and until Plaintiff was recertified. 13 C.F.R. § 121.1009(g)(5). Moreover, an appeal of a SBA size determination to OHA affects a current procurement only if OHA issues a decision *prior* to a contract award:

> If the formal size determination is appealed to OHA, the OHA decision on appeal will apply to the pending procurement or sale if the decision is received before award. OHA decisions received after contract award *will not apply to that procurement or sale*, but will have future effect, unless the contracting officer agrees to apply the OHA decision to the procurement or sale.

13 C.F.R. § 121.1009(g)(3) (emphasis added).[12]

In this case, Plaintiff was awarded a contract on January 25, 2009. Compl. ¶ 16. Five days later, VETS filed a SBA size protest. Gov't App. at 6. On April 28, 2009, the SBA determined that Plaintiff was "other than small," effective immediately, thereby rendering Plaintiff ineligible to be awarded a contract under Solicitation No. W9133L-09-C-00007. 13 C.F.R. §§ 121.1004(c), 121.1009(g)(1). Although Plaintiff filed a timely appeal of the SBA's April 28, 2009 size determination to the OHA, that determination applied to the January 25, 2009 Contract at issue, because OHA did not issue a final decision prior to the May 8, 2009 award to VETS. 13 C.F.R. § 121.1009(g)(3). Therefore, Plaintiff did not have a "substantial chance" of being awarded a contract under the December 12, 2008 Solicitation and consequently does not have standing to contest the May 8, 2009 Contract. *Int'l Mgmt. Svcs.*, 80 Fed. Cl. at 6 ("[P]laintiff is not an 'interested party' entitled to pursue either claim because under the facts of this case, there is no chance, much less a substantial chance, that plaintiff could be awarded the contract.").

In an attempt to surmount this barrier to standing, Plaintiff argues that the Small Business Size Regulations are not applicable in this case, because they apply only to a "prospective awardee." 13 C.F.R. § 121.1004(a)(2) (stating that a timely protest is one that is "received by the contracting officer prior to the close of business on the [fifth] day, exclusive of Saturdays, Sundays, and legal holidays, after the contracting officer has notified the protestor of the identity of the *prospective awardee*.") (emphasis added). Plaintiff insists it was not a "prospective awardee," but an "awardee."

---

[12] This regulation gives the contracting officer discretion in applying a post-award OHA decision to a pending procurement. 13 C.F.R. § 121.1009(g)(3). This issue is now moot, because the OHA affirmed the SBA's April 28, 2009 size determination. Amend Compl. ¶ 7. Therefore, even if the CO had applied the July 1, 2009 OHA decision, Plaintiff still was "other than small" for purposes of the procurement at issue since the OHA *affirmed* the SBA size determination.

TR at 66. Therefore, VETS' January 30, 2009 SBA protest was not timely and the January 25, 2009 Contract was not subject to challenge. *Id.* In the alternative, Plaintiff argues that since it was a qualified small business on January 25, 2009, the award on that date was valid, and the Government's subsequent attack on Plaintiff's size is both late and moot. Pl. Resp. at 12-13.

Plaintiff's arguments are misplaced. First, VETS' January 30, 2009 SBA protest was timely and the SBA's April 28, 2009 size decision properly was effective retroactively to the January 25, 2009 Contract award, because SBA size determinations are not limited to the pre-award period. 13 C.F.R. § 121.1004. In addition, the term "prospective awardee" must be read to be consistent with FAR 15.503(a)(2), requiring that unsuccessful bidders be afforded pre-award notice of the "potential awardee." 48 C.F.R. § 15.503(a)(2). Moreover, Section 121.1004(a)(5) anticipated a situation where, as in this case, the CO failed to make the required notification to unsuccessful offerors, as required by FAR 15.503(a)(2). Section 121.1004(a)(5) ensures that a CO's failure to provide the requisite pre-award notification will not deprive unsuccessful offerors of the opportunity to file a timely protest:

> No notice of award. Where there is no requirement for written pre-award notice or notice of award, or where the contracting officer has failed to provide written notification of award, the 5-day protest period will commence upon oral notification by the contracting officer or authorized representative or another means (such as public announcements or other oral communications) of the identity of the apparent successful offeror.

Section 121.1004(a)(5); *see also Matter of: Spectrum Security Services*, *Inc.*, Comp. Gen. Dec. B-297320.2, 2005 CPD ¶ 227 ("[W]here the agency failed to give the required pre-award notice, we have sustained protests and recommended the termination of contracts awarded to the concerns that were determined to be large businesses.").

In addition, a timely protest take precedent even if a contract has been awarded. 13 C.F.R. § 121.1004(c) ("A timely filed protest applies to the procurement in question even though a contracting officer awarded the contract prior to receipt of the protest."). As the GAO has recognized:

> [I]t is inconsistent with the integrity of the Small Business Act, 15 U.S.C. § 631 *et seq.*, to permit a large business, which was ineligible under the terms of the solicitation, to continue to perform the contract. In this regard, a formal size determination by the SBA becomes effective immediately and remains in full force and effect unless and until reversed by the SBA's OHA, 13 C.F.R. § 121.1009(g)(1)[.]

*Matter of: Spectrum Security Services*, *Inc.*, Comp. Gen. Dec. B-297320.2, 2005 CPD ¶ 227.

Likewise, in this case, the SBA's April 28, 2009 size determination affected the legitimacy of Plaintiff's January 25, 2009 award, because VETS' January 30, 2009 protest was timely. *Delaney* v. *United States*, 56 Fed. Cl. 470, 476 (2003) (holding that size protest filed post-award may be controlling, if contracting officer decided to re-award the contract).

Plaintiff also requests that the court direct the NGB to terminate the May 8, 2009 Contract award to VETS and reinstate Plaintiff's January 25, 2009 Contract. Compl. ¶ 63. The May 8, 2009 Contract, however, was awarded, because of the SBA's April 28, 2009 size determination that Plaintiff was "other than small." As a matter of law, such an award is valid, unless the contracting officer receives notice of an appeal to the OHA prior to the award of the contract. FAR 19.302(g)(2).[13] In fact, the United States Court of Federal Claims has held that this presumption is conclusive, and not rebuttable. *Chapman Law Firm* v. *United States*, 63 Fed. Cl. 25, 35 (2004) ("Because plaintiff did not file [an] appeal prior to the contract award and OHA did not issue a decision before HUD awarded HMBI the contract, the award of this contract is unchallengable.") (citing FAR 19.302(g)(2)). This is not a novel construction. The conclusive presumption of validity has been the rule for many years, because it allows contractors to begin work on a Government project, without fear of post-award rescission. *Mid-West Const, Ltd.* v. *United States*, 387 F.2d 957, 963 (Ct. Cl. 1968) (holding that the word "presumed" was equivalent to "deemed," creating a conclusive presumption serving the interest of finality regarding when delay in the contract performance would be disadvantageous to the Government).

Therefore, in this case, even if the CO received notice of the pending OHA appeal, unless an OHA decision was issued prior to the May 8, 2009 re-award of the contract, the CO retained complete discretion to reinstate the January 25, 2009 Contract to Plaintiff or terminate it and award

---

[13] FAR 19.302(g)(2) provides:

The SBA Government Contracting Area Director, or designee, will determine the small business status of the questioned concern and notify the contracting officer and the concern of the determination. Award may be made on the basis of that determination. This determination is final unless it is appealed in accordance with paragraph (i) of this section, and the contracting officer is notified of the appeal before award. If an award was made before the time the contracting officer received notice of the appeal, the contract shall be presumed to be valid.

48 C.F.R. § 19.302(g)(2).

the May 8, 2009 Contract to another bidder. 13 C.F.R. § 121.1009(g)(3).[14] Although Plaintiff argues that the January 25, 2009 Contract is entitled to the same presumptive validity as the May 8, 2009 Contract with VETS, as a matter of law, the January 25, 2009 Contract is not entitled to a presumption of validity, because VETS SBA size protest was timely and relevant to the procurement at issue. 13 C.F.R. § 121.1004(c). For these reasons, the court has determined that Plaintiff does not have standing to protest the May 8, 2009 Contract awarded to VETS.

> ii.  **Plaintiff Does Not Have Standing To Protest The National Guard Bureau's Alleged Bad Faith Termination Of The January 25, 2009 Contract.**

The May 13, 2009 Complaint also "protests" NGB's "disparate treatment of Plaintiff" and alleges "bad faith in terminating Plaintiff's [January 25, 2009] [C]ontract [as a] violation of several procurement statutes and regulations." Compl. ¶ 44. The Tucker Act authorizes the court to "render judgment on an action by an *interested party* objecting to a solicitation by a federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (emphasis added). In *Distributed Solutions, Inc.* v. *United States*, 539 F.3d 1340 (Fed. Cir. 2008), the United States Court of Appeals for the Federal Circuit defined "procurement" broadly, "includ[ing] all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services and ending with contract completion and closeout." *Id*. at 1345 (internal citations omitted).

The United States Court of Appeals for the Federal Circuit, however, also has held that the term "interested party" in 28 U.S.C. § 1491(b) is limited to "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Employees*, 258 F.3d at 1302. In this case, Plaintiff was a contract *awardee*. But the May 13, 2009 Complaint does not challenge the "award of the contract [to another] or [the] failure to award the contract." *Id*. Therefore, Plaintiff does not have standing to protest the NGB's alleged January 25, 2009 "bad faith" termination, pursuant to 28 U.S.C. § 1491(b).

---

[14] Section 121.1009(g)(3) of Title 13 of the Code of Federal Regulations provides:

> If the formal size determination is appealed to OHA, the OHA decision on appeal will apply to the pending procurement or sale if the decision is received before award. OHA decisions received after contract award will not apply to that procurement or sale, but will have future effect, *unless the contracting officer agrees to apply the OHA decision to the procurement or sale*.

13 C.F.R. 121.1009(g)(3) (emphasis added).

The United States Court of Appeals for the Federal Circuit, however, has held bad faith termination claims may be brought under the CDA. *Krygoski Const. Co., Inc.* v. *United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996) ("A contracting officer may not terminate for convenience in bad faith, for example, simply to acquire a better bargain from another source. When tainted by bad faith or an abuse of contracting discretion, a termination for convenience causes a contract breach."); *see also Data Monitor Systems, Inc.* v. *United States*, 74 Fed. Cl. 66, 71 (2006) ("As an initial matter, defendant is correct in asserting that the court lacks jurisdiction to enjoin the Air Force's termination of DMS's contract. . . .  Such a challenge may only be brought under the CDA, which requires that a claim first be submitted to the contracting officer.").  Therefore, Plaintiff's "bad faith termination" claim could be alleged under the CDA "when the protestor sought to challenge the [G]overnment's termination for convenience of a contract."  28 U.S.C. § 1491(a)(2);[15] *see also Frazier* v. *United States*, 79 Fed. Cl. 148, 160 (2007) ("[T]he court is persuaded that pure contract claims are not appropriate in a bid protest, even if clothed in the guise of a protest of an alleged statutory violation occurring in relation to a procurement.").

For these reasons, Plaintiff's "[bid] protest counts," *i.e.*, Compl. ¶¶ 44-45, regarding the NGB's alleged "bad faith" termination of the January 25, 2009 Contract are dismissed for lack of subject matter jurisdiction. *Dalton* v. *Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir.1995) ("When the Contract Disputes Act applies, it provides the *exclusive* mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option.") (emphasis added).  Plaintiff, however, may re-assert these claims, if they are first properly submitted to the CO, as discussed below.

### iii.    Decisions Of The Small Business Administration And Office Of Hearings And Appeals Decisions Are Non-Justiciable.

On August 13, 2009, Plaintiff filed a Motion For Leave To File A First Amended Complaint And Request For Injunctive Relief ("Motion For Leave") and enclosed a proposed First Amended Complaint and Request for Injunctive Relief ("Am. Compl.").  The only substantive difference between Plaintiff's May 13, 2009 Complaint and the proposed August 13, 2009 Amended Complaint is that the latter includes a "protest" directly challenging the OHA's July 1, 2009 and July 7, 2009 decisions as "arbitrary, irrational, and/or otherwise not in accordance with applicable procurement law and regulation."  Am. Compl. ¶ 7.

On August 31, 2009, the Government responded to Plaintiff's August 13, 2009 Motion for Leave by filing a Renewed Motion To Dismiss And Response To Plaintiff's Motion For Leave To File Plaintiff's First Amended Complaint ("Gov't Ren. Mot.").  The Government contends that

---

[15] Section 1491(a)(2) of the Tucker Act provides that: "[t]he [United States] Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, *including a dispute concerning termination of a contract*[.]"  28 U.S.C. § 1491 (a)(2) (emphasis added).

Plaintiff should have filed a motion to file a supplemental pleading, pursuant to RCFC 15(d) rather than a motion to amend the complaint, pursuant to RCFC 15(a).  Gov't Ren. Mot. at 6.  The Government asserts that the only reason behind Plaintiff's Motion to Amend is to incorporate facts that have occurred after the filing of the May 13, 2009 Complaint.  *Id.*  The Government argues that the proper way to incorporate post-complaint facts is to file a motion to supplement, pursuant to RCFC 15(d).  *Id.* (citing *GAF Bldg. Materials Corp.* v. *Elk Corp.*, 90 F.3d 479, 483 n.5 (Fed. Cir. 1996)).

RCFC 15(a)(2) states in relevant part that "a party may amend its pleading only with the opposing party's consent or the court's leave.  *The court should freely give leave when justice so requires.*"  RCFC (15)(a)(2) (emphasis added).  In considering Plaintiff's August 13, 2009 Motion, the court is mindful of the United States Supreme Court's admonition in *Foman* v. *Davis*, 371 U.S. 178 (1962) that Rule 15(a)'s "mandate is to be heeded."  *Id.* at 182.  The decision to allow or deny an opportunity to amend is within the sound discretion of the court.  *Id.*  *Foman* makes clear, however, that the decision to deny a plaintiff the opportunity to amend without any stated justification is an abuse of discretion.  *Id.*  Nevertheless, *Foman* provided five reasons that would justify denial of a motion for leave to amend a complaint:

> In the absence of any apparent or declared reason-such as [1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment,[5] futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'

*Id.*

In examining *Foman's* fifth rationale, "futility of the amendment," the United States Court of Appeals for the Federal Circuit has held that, "[i]n assessing 'futility,' the [trial] court applies the same standard of legal sufficiency as [it] applies under Rule 12(b)(6)."  *Merck & Co., Inc.* v. *Apotex, Inc.*, 287 Fed. Appx. 884, 888 (Fed. Cir. 2008) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997)).  Therefore, if Plaintiff's proposed August 13, 2009Amended Complaint does not present any new claims for relief that would survive a RCFC 12(b)(6) motion to dismiss, leave should not be granted.

The proposed August 13, 2009 Amended Complaint alleges no new facts that were not previously presented in numerous status reports.  6/10/09 Pl. St. Rep; 7/2/09 Pl. St. Rep.; 7/6/09 Gov't St. Rep; 7/6/09 Pl. St. Rep.; 7/8/09 Pl. St. Rep.  These post-complaint facts, namely the July 2, 2009 and July 7, 2009 OHA decisions are not sufficient to support a claim that would survive a RCFC 12(b)(6) motion to dismiss, because appeal of these OHA decisions is not justiciable.  Whether a question is justiciable is distinct from whether the court has jurisdiction.  *Baker* v. *Carr,* 369 U.S. 186, 198 (1962) (describing the distinction between jurisdiction and justiciability as "significant" in that justiciability depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially

17

molded); *see also Murphy* v. *United States*, 993 F.2d 871, 872 (Fed Cir. 1993) ("[T]he existence of jurisdiction does not confirm the court's ability to supply relief . . . The issue must also be justiciable; it must be within the competency of the court."); *Int'l Mgmt. Svcs. Inc.*, 80 Fed Cl. at 9. In this case, the court is unable to provide Plaintiff with the requested injunctive relief. As discussed *infra*, Plaintiff's failure to appeal the April 28, 2009 SBA size determination to the OHA prior to the May 8, 2009 award to VETS, as a matter of law, created a presumptively valid contract that now cannot be invalidated by the court. *Chapman,* 63 Fed. Cl. at 35. When the United States Court of Federal Claims has exercised jurisdiction to review SBA and OHA size determinations, it has recognized the non-justiciability of such cases, if the contract becomes presumptively valid by virtue of an award prior to the CO being notified of an appeal to the OHA. *Id*. at 35-36 (holding that the court had jurisdiction to review an SBA size determination, but plaintiff's claim was nevertheless not justiciable, because the plaintiff failed to file an appeal to the OHA prior to award which made the contract at issue "unchallengeable"); *see also Int'l Mgmt. Svcs. Inc.*, 80 Fed Cl. at 10-11 (holding that Congress had delegated the authority to promulgate regulations for protesting SBA size determinations to the SBA, and the court was not free to ignore that authority). Therefore, even if the court were to overturn the contested OHA decisions, it would have no effect on the presumptive validity of the May 8, 2009 contract award to VETS.

Nevertheless, Plaintiff's proposed August 13, 2009 Amended Complaint also seeks: review of the July 1, 2009 OHA decision to affirm the April 28, 2009 SBA size determination for purposes of providing *prospective* relief in future procurements; reversal of the July 1, 2009 OHA decisions; and an "order[] that SBA cease its reliance on the improper OHA decision in SBA No. SIZ-5049 and remove any bar to [Plaintiff] self-certifying as small." Am. Compl. ¶ 67 (d)(vi). Such relief presumably would allow Plaintiff to self-certify as small for procurements where the size standard is less than $7 million. Am. Compl. ¶ 7. Without such relief, Plaintiff contends it has no ability to compete for future small business set-aside contracts that it otherwise would be eligible to receive. Am. Compl. ¶ 64.

Plaintiff, however, is not barred from bidding on future procurements. The SBA regulations provide a procedure for re-certification as a small business and an application may be filed "at any time" and ultimately may be appealed to the OHA. 13 C.F.R. 121.1010. Importantly, 13 C.F.R. 121.1101 provides explicitly that this administrative remedy "must be exhausted before judicial review of a formal size determination *may be sought* in a court." (emphasis added). Therefore, the court's consideration of Plaintiff's request for injunctive relief is not ripe, since an alternative remedy exists to address Plaintiff's concerns about future procurements. *Magellan Corp.* v. *United States*, 27 Fed. Cl. 446, 447 (Fed. Cl. 1993) ("The relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction.").[16]

---

[16] In addition, the court questions whether a claim for prospective relief is within the court's Tucker Act Jurisdiction, *i.e.*, "in connection with a procurement." 28 U.S.C. § 1491(b)(1). *Prospective* relief would seem to fall outside "any *stage* of the federal contracting acquisition process." *Distributed Solutions, Inc.* v. *United States*, 539 F.3d at 1345-46 (emphasis added).

18

Accordingly, the court has determined that Plaintiff's proposed August 13, 2009 Amended Complaint presents futile claims that would not survive a RCFC 12(b)(6) Motion to Dismiss. Plaintiff's proposed Amended Complaint presents claims that are either non-justiciable, because the court cannot provide the relief requested or has failed to exhaust administrative remedies making injunctive relief inappropriate.  Therefore, Plaintiff's August 13, 2009 Motion for Leave is denied.[17]

### 2.      Plaintiff's Contract Disputes Act Claim.

#### a.      The Government's Argument.

The Government argues that the court does not have jurisdiction to adjudicate allegations regarding the alleged CDA violations, because Plaintiff has not filed a claim with the CO for a sum certain and the CO has not issued a final decision.  Gov't Mot. at 14-17; *see also* TR at 13-17.

#### b.      Plaintiff's Response.

Plaintiff responds that a claim was submitted to the CO via e-mail on May 5, 2009 and, although the e-mail does not contain a specific dollar amount, the claim "focuses on and seeks 'other relief arising under or relating to the contract' at issue."  Pl. Resp. at 21 (quoting 48 C.F.R. § 233-1(c)).  Therefore, a claim does not need to assert a sum certain in this case.  *Id*.  Plaintiff also argues that the CO "fully and finally" denied Plaintiff's claim when the NGB terminated the January 5, 2009 Contract with Plaintiff and awarded the May 8, 2009 Contract to VETS.  *Id*.

#### c.      The Government's Reply.

The Government replies that submitting a claim for a "sum certain" is an issue of "jurisdiction."  Gov't Reply at 14.  Plaintiff has not submitted a valid claim, because Plaintiff's claim for money is not "other relief;" the "other relief" provision of 48 C.F.R. § 52.233-1(c) is directed to non-monetary remedies.  *Id*. at 14-15.  In addition, any request for the payment of money must include a sum certain.  *Id*. at 15.  Plaintiff's claim also was not "constructively denied" simply because the CO dismissed the agency level protest.  *Id*. at 16.  The act of terminating a contract does not mean that the CO is denying all of a contractor's monetary claims.  *Id*.  Until the CO makes a final determination on a properly submitted claim, the court does not have jurisdiction to adjudicate Plaintiff's CDA claim.  *Id*.

---

[17] Because the court is denying Plaintiff's Motion For Leave, the "Motion to Dismiss" portion of the Government's Renewed Motion To Dismiss And Response To Plaintiff's Motion For Leave, is premature.  Likewise, the "Response" portion of Plaintiff's subsequent filing on September 25, 2009 is premature.  Plaintiff's "Reply" to the Government's Response is dismissed as untimely. RCFC 7.2(a)(2) (requiring replies be filed within seven days of a response filing).

### d.   The Court's Resolution.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the Contract Disputes Act of 1978 [41 U.S.C. § 601, *et seq.*], including a dispute concerning termination of a contract." 28 U.S.C. § 1491(a)(2); *see also* 41 U.S.C. § 609(a) ("Except as provided in paragraph (2), and in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary."). An aggrieved contractor, however, must file a claim, with and receive a final decision from, the CO before it has standing to seek adjudication of a claim. *Alliant Techsystems, Inc.* v. *United States*, 178 F.3d 1260, 1267 (Fed. Cir. 1999) (holding that "the Tucker Act gives the [United States] Court of Federal Claims jurisdiction over CDA claims only when 'a decision of the contracting officer has been issued under section 6 of [the CDA].'") (quoting 28 U.S.C. § 1491(a)(2)).

FAR 52.233-1(c) defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 52.233-1(c). Therefore, the United States Court of Appeals for the Federal Circuit has held that to achieve standing to request adjudication of a CDC claim: "(1) the contractor must submit the demand in writing to the contracting officer, (2) the contractor must submit the demand as a matter of right, and (3) the demand must include a sum certain." *H.L. Smith, Inc.* v. *Dalton*, 49 F.3d 1563, 1565 (Fed. Cir. 1995).

The May 5, 2009 e-mail from Plaintiff's counsel to NGB states that, "TCI challenges any move to terminate its contract based upon the improper SBA decision as a breach and files this *as a claim for lost profits, damages and attorneys fees on the subject contract pursuant to the Contract Disputes Act.*" *Id.* (emphasis added). Plaintiff was required by the CDA, however, to "submit in writing 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'" *Contract Cleaning Maint., Inc.* v. *United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). No sum certain or even estimated amount of damages is set forth in the May 5, 2009 e-mail. Pl. Ex. 6. Although Plaintiff explains that the May 5, 2009 claim also "focuses on and seeks 'other relief,'" the "other relief," applies only to non-monetary claims. *Garrett* v. *General Elec. Co.*, 987 F.2d 747, 749 (Fed. Cir. 1993) ("The . . . alternative to a monetary remedy - the directive to correct or replace defective engines - constitutes 'other relief' within the FAR's third category of 'claims.'").

The May 5, 2009 e-mail also fails to meet the FAR "matter of right" requirement. 48 C.F.R. § 52.233-1(c) ("A written demand or written assertion by one of the contracting parties seeking, *as a matter of right*, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to [the] contract.") (emphasis added). As the United States Court of Appeals for the Federal Circuit has explained, "the phrase 'as a matter of right' in the regulatory definition of 'claim' requires only that the contractor specifically assert entitlement

to the relief sought.  That is, the claim must be a demand for something *due or believed to be due*[.]" *Alliant Techsystems*, 178 F.3d at 1265 (emphasis added); *see also BLR Group of Am., Inc.* v. *United States*, 84 Fed. Cl. 634, 640 (2008) ("Plaintiff is only required to assert entitlement that has some legal basis.").  Plaintiff's "claim" was submitted on May 5, 2009.  Pl. Resp. at 21.  The January 25, 2009 Contract was not cancelled until May 8, 2009.  Compl. ¶ 27.  Therefore, Plaintiff's e-mail "claim" recognizes that a termination of the January 25, 2009 Contract was required for a CDA claim to arise.  Pl. Ex. 6 ("[W]e write to confirm our concerns and to formalize an agency protest and claim *should* the National Guard Bureau decide to terminate the subject award to [Plaintiff.] . . . For the time being, the most appropriate action that NGB could take is no action at all pending a decision by [OHA] on [Plaintiff's] appeal[.]") (emphasis added).  Accordingly, Plaintiff's concede there was no basis in fact or law for alleging that the May 5, 2009 e-mail was a valid CDA claim.

Finally, the CDA requires that, after receiving a claim, the CO "[will] issue [a] decision in writing, and [will] mail or otherwise furnish a copy of the decision to the contractor.  The decision [will] state the reasons for the decision reached, and [will] inform the contractor of [the] rights as provided in this chapter."  41 U.S.C. § 605(a).  The United States Court of Federal Claims has held that whether a final decision has been issued depends on the nature of the communication between the CO and the contractor.  *Am. Red Ball Int., Inc.* v. *United States*, 79 Fed. Cl. 474, 480 (2007).  In this case, Plaintiff argues that the CO's May 8, 2009 decision to terminate the January 25, 2009 Contract was a final decision of Plaintiff's May 5, 2009 CDA claim.  Pl. Resp. at 21.  Neither party, however, provided the CO's termination letter to the court for review.  Consequently, the court cannot determine if that letter may serve as a final decision under the CDA.  In any event, Plaintiff's claim for lost profits, damages, and other fees alleged to be due, because of the alleged bad faith termination, is a separate and distinct claim from the Government's termination for convenience.  *Armour of Am.* v. *United States*, 69 Fed. Cl. 587, 590, 591 (2006) (holding that the United States Court of Federal Claims "does not have jurisdiction over a new claim or a claim of different scope that was not previously presented and certified to the contracting officer for decision.").

Accordingly, because Plaintiff failed to file a valid claim, Plaintiff's alleged CDA violation also must be dismissed.  *England* v. *The Swanson Group*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) (holding that "jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim[ ]").

## III.   CONCLUSION.

For the reasons discussed herein, the Government's May 19, 2009 Motion To Dismiss is granted in part.  Claims regarding the alleged wrongful termination of the January 25, 2009 Contract, but asserted under 28 U.S.C. § 1491(b) are dismissed.  Plaintiff's August 13, 2009 Motion For Leave To Amend the May 13, 2009 Complaint is denied.

Plaintiff's claims alleging violations of the Procurement Integrity Act, the Trade Secrets Act, and Contract Disputes Act, are stayed, to afford Plaintiff the opportunity to submit a valid claim to the CO for disposition of the alleged wrongful termination claim.

**IT IS SO ORDERED.**

 s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**